UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLEEN BURNS,

    Plaintiff,

                                  Case No. 16-

-vs-

                                  Hon.

MYCARE HEALTH CENTER,

    Defendant.

_____

Jennifer L. McManus  (P65976)
FAGAN MCMANUS, P.C.
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com
_____

## **COMPLAINT AND JURY DEMAND**

There is no other pending or resolved civil action
arising out of the transaction or occurrence
alleged in the Complaint.

NOW COMES Plaintiff, COLLEEN BURNS, by and through her attorneys, FAGAN MCMANUS, P.C., and for her cause of action against the Defendant, states as follows:

### **JURISDICTIONAL ALLEGATIONS**

1.    Plaintiff, COLLEEN BURNS is a resident of the City of Sterling Heights, County of Macomb, State of Michigan.

2. Defendant, MYCARE HEALTH CENTER (hereinafter "Defendant") is a Michigan Nonprofit Corporation and at all times pertinent hereto had its principal place of business in the City of Center Line, County of Macomb, State of Michigan.

3. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b), as it is the district in which Defendants conduct business.

4. This Court has jurisdiction pursuant to the 28 U.S.C. §1331 (federal question), False Claims Act, 31 U.S.C. §3729 et seq., 31 U.S.C. §§ 3732(a) and 3730(b), and 28 U.S.C. §1367 (supplemental).

## **GENERAL ALLEGATIONS**

5. Plaintiff was previously employed as a billing liaison for Defendant.

6. Plaintiff began her employment with Defendant in January 2014.

7. Defendant operates multiple healthcare facilities within southeast Michigan that offer medical services to underserved populations.

8. Plaintiff worked at Defendant's Center Line, Michigan location.

9. During Plaintiff's employment, Darlene Vasi was Defendant's Chief Executive Officer.

10. Defendant has been approved through the Centers for

2

Medicare & Medicaid Services ("CMS") as a Federally Qualified Health Center ("FQHC") in the Medicare program (Title XVII of the Social Security Act) since at least November 2013.

11. As a result of approval as a FQHC, Defendant was authorized to bill Medicare and Medicaid for healthcare services provided to Defendant's patients.

12. As a term of its approval as a FQHC, Defendant is to notify CMS of any "changes in staffing, services or organization which might affect [its] certification status."

13. From at least the time of Plaintiff's hire through September 2014, Vasi maintained Defendant's administrative office in her home basement.

14. In September 2014, the Health Resources and Services Administration ("HRSA") of the United States Public Health Service planned an inspection of Defendant's operations.

15. After learning of the planned inspection, Vasi moved Defendant's administrative offices to Defendant's Mt. Clemens location.

16. Defendant has, at various points in time, claimed that it operates five healthcare facilities, located in Mt. Clemens, Center Line, Clinton Township (on Groesbeck and on Garfield) and Madison Heights

(also referred to as "Sacred Heart").

17. On April 8, 2015, Plaintiff notified a third-party vendor that Defendant "permanently" closed its Garfield/Clinton Township office, and that the Garfield/Clinton Township office would no longer be seeing patients.

18. The next day, she received an email from Vasi's administrative assistant notifying her that she should not have used the word "permanently" to an "external vendor," that the "Garfield location was taken 'offline' temporarily," and that Vasi "hasn't confirmed her plans for the Garfield location."

19. Plaintiff asked Defendant's [former] Administrator why she received an email correcting her word choice, and was told that Vasi is "trying to cover her a** with HRSA."

20. In addition to its FQHC designation, Defendant applied for and received annual Service Area Competition grants from HRSA.

21. Such grants are awarded by HRSA under Title III, Section 330 of the Public Health Services Grant, 42 U.S.C. § 254b.

22. Section 330 authorizes HRSA to award funding to public and non-profit community health centers that meet Section 330 requirements.

23. HRSA awards Service Area Competition grants only after its

4

receipt of a lengthy annual application that requires detailed information regarding an applicant's locations, services offered, and communities served.

24. In addition, much of the grant application requires information that is to be completed by a medical provider.

25. In October 2015, Defendant began to work on completing its Service Area Competition grant application for the following year.

26. Included in the grant application was a representation that Defendant operates five clinics.

27. Vasi conducted a staff meeting, during which she handed out assignments to staff members related to completing the grant application.

28. Plaintiff questioned her assignment, asking, "What is this? I don't know what's going on."

29. She was told that the assignments are "for the grant, to keep the business running," to which Plaintiff replied, "I don't know anything about grants."

30. Part of Plaintiff's assignment was to complete a portion of the grant application that required the applicant to provide medical protocols and goals for several different diagnoses, such as obesity, diabetes and hypertension.

31. The following week, Plaintiff again spoke with Vasi and other members of Defendant's administration, and told them, "I don't understand this; I don't think I should be doing this; I'm not qualified to complete a doctor or medical provider section of this application."

32. In response, Plaintiff was told, "Failure is not an option. Just get it done."

33. Later that week, Plaintiff again met with Defendant's administration, and stated "I'm not qualified to complete this application; I need help with this; I don't know what I'm doing."

34. Plaintiff refused to complete the medical provider portion of the grant application.

35. Plaintiff told Defendant that she would quit working for Defendant before she would complete the medical provider portion of the grant application, and that she believed it was illegal for her to complete the medical provider portion of the grant application.

36. Plaintiff explained that she felt that it was fraudulent for someone who was not a doctor or medical provider to complete that portion of the application that was required to receive federal funds.

37. In response, Defendant accused Plaintiff of not being a "team player."

38. As a result of Plaintiff's refusal, Defendant instructed Melissa Zetouna to complete the medical provider portion of the grant application; however, Melissa refused to do so, and was terminated.

39. Brittany, a medical assistant and receptionist for Defendant ultimately completed the medical provider portion of the grant application.

40. Brittany told Plaintiff, "I tried to use big words so that HRSA will think a doctor wrote it."

41. On March 31, 2016, Plaintiff was given a poor performance review, in which it was noted that she "does not adapt well to change," and that she "resists" "new ideas" "vehemently."

42. That day, Plaintiff wrote a letter to Defendant's Board of Directors about her review, in which she wrote, among other things, "[t]his bullying manner is how I have been treated for the past several months. I believe that this treatment stems from me refusing to do something that I deemed unethical and possibly illegal."

43. Her letter further stated that her supervisors "told me that they expected me to complete a part of the HRSA grant application that should have been completed by a physician or other medical provider. . . I refused and told them that I would even quit. I, being a medical biller, was not qualified for such a task, especially considering it was on an application to

7

obtain two million dollars in federal grant money."

44. On April 4, 2016, Plaintiff contacted HRSA and notified it that she believed that the information on Defendant's Service Area Competition grant was false. She notified HRSA that certain areas of the application that should have been completed by a medical provider were in fact completed by a medical assistant/receptionist; that the statement regarding the number of clinic locations provided to HRSA was false; that while Defendant claimed to serve five locations, during Plaintiff's employment Defendant had never serviced patients at one location and had only serviced patients at another location for part of the time Plaintiff worked there; that while Defendant claimed that there were behavioral health clinics co-located within four out of five clinics, only two clinics actually co-located with behavioral health clinics; and that with regard to prescription assistance, Vasi has repeatedly said that "if [a patient] is on expensive meds, let's get them off. Anyone with three or more prescriptions needs to be kicked off."

45. Plaintiff further stated, "I am afraid that I will lose my job. I have already been harassed and treated unfairly since I refused to complete the medical provider section of the application."

46. Despite her concerns, Defendant learned of Plaintiff's

complaints to HRSA.

47. On April 18, 2016, during a staff meeting, Vasi discussed the Sacred Heart Clinic and HRSA, and told the staff that HRSA does not care if they operate the Sacred Heart Clinic or not, but that they were going to begin scheduling a provider to work out of that clinic.

48. On April 20, 2016, Vasi asked Plaintiff to show her all of her outgoing emails, and then had Plaintiff print all of her emails that had "HRSA Grant" or "Sacred Heart" in the subject line. Vasi then sat at Plaintiff's computer for approximately thirty minutes while she reviewed and printed Plaintiff's emails.

49. That day, Vasi suspended Plaintiff for three days.

50. On April 25, 2016, Plaintiff was terminated.

51. Defendant's fraudulent grant application resulted in a federal Service Area Competition Grant award.

## COUNT I
## RETALIATION IN VIOLATION OF THE FALSE CLAIMS ACT

52. Plaintiff incorporates the above Paragraphs as if specifically repeated herein.

53. The retaliation provision of the False Claims Act protects an employee or contractor from being "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the

terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h).

54. For the reason that certifying that she was providing information the Service Area Competition Grant application in the capacity of a medical provider would represent a False Claim to the government, Plaintiff refused to provide such information on the grant application.

55. Plaintiff's statements to Defendant as set forth in the General Allegations of this Complaint constitute protected activity under 31 U.S.C. § 3730(h).

56. In addition, Plaintiff's statements to HRSA regarding incorrect and/or fraudulent information on Defendant's grant application constitute a protected activity under 31 U.S.C. §3730(h).

57. Defendant was aware of Plaintiff's statements to HRSA regarding incorrect and/or fraudulent information on Defendant's federal grant application.

58. Plaintiff was terminated for refusing to fraudulently fill out a grant application that sought funding from the U.S. government.

59. Plaintiff was also terminated for notifying HRSA that she

believed Defendant's grant application was fraudulent and illegal, and that it would result in Defendant fraudulently obtaining federal funds.

60. As a result of Plaintiff's termination, Plaintiff has suffered significant damages, including, but not limited to:

    a. Loss of wages and benefits, past and future.

    b. Out-of-pocket losses.

    c. Lost opportunities for career advancement.

    d. Humiliation, outrage and loss of professional reputation.

    e. Other damages to be determined.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendant in whatever amount the Court of Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs and attorney fees.

## COUNT II
## DISCHARGE IN BREACH OF PUBLIC POLICY
### (UNDER MICHIGAN LAW)

61. Plaintiff incorporates the above Paragraphs as if specifically repeated herein.

62. Plaintiff was terminated for refusing to complete the portion of the HRSA Service Area Competition Grant application that was required to

11

be completed by a medical service provider.

63. Plaintiff reasonably objected to completing that portion of the Service Area Competition Grant application because it constituted a fraud on the United Sates Government, and she refused to take part in conduct in furtherance of the acceptance of fraudulently obtained federal grant funds from the Government.

64. Defendant's conduct that Plaintiff opposed and refused to participate in was illegal and in violation of the false claims act, 31 U.S.C. § 3729-3733 as well as other federal and state laws.

65. Defendant violated the Policy of the State of Michigan by terminating Plaintiff in retaliation for her objection to and refusal to participate in the unlawful practices as set forth in this complaint.

66. Plaintiff has been harmed and continues to be harmed in that she has and will continue to suffer economic damages as well as humiliation, outrage, and loss of professional reputation as a result of Defendant's actions.

67. As a result of Plaintiff's termination, Plaintiff has suffered significant damages, including, but not limited to:

    a. Loss of wages and benefits, past and future.

    b. Out-of-pocket losses.

      c.      Lost opportunities for career advancement.

      d.      Humiliation, outrage and loss of professional reputation.

      e.      Other damages to be determined.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendant in whatever amount the Court of Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, past and future, together with interest, costs and attorney fees.

## COUNT III
## VIOLATION OF WHISTLEBLOWER PROTECTION ACT, MCL 15.362

68.    Plaintiff incorporates the above paragraphs as if specifically repeated herein.

69.    Pursuant to MCL 15.362:

> "An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally, or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to laws of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by the public body, or a court action."

70.    Defendant is considered an "employer" under the statute.

13

71. Plaintiff reported a violation or a suspected violation of a law or regulation or rule promulgated pursuant to the law of this state, a political subdivision of this state, or the United States to a public body.

72. Defendant was aware that Plaintiff reported a violation or a suspected violation of a law or regulation or rule promulgated pursuant to the law of this state, a political subdivision of this state, or the United States to a public body.

73. Plaintiff was terminated for notifying HRSA that she believed Defendant's grant application was fraudulent and illegal, and that it would result in Defendant fraudulently obtaining federal funds.

74. Such conduct by Plaintiff was protected activity under the Michigan Whistleblower's Protection Act, MCL 15.362.

75. Defendant's actions in terminating Plaintiff's employment was in retaliation for Plaintiff engaging in protected activity under MCL 15.362.

76. As a direct and proximate result of Defendant's discriminatory and retaliatory conduct in violation of MCL 15.362, Plaintiff has suffered and will in the future suffer damages including, but not limited to:

    a.    Loss of wages and earning potential;

    b.    Loss of employee benefits;

    c.    Loss of promotional opportunities;

    d.    Loss of professional esteem and consequent damage to her professional career;

    e.    Embarrassment, humiliation, inconvenience, mental anguish, indignity, outrage and disappointment;

    f.    Exemplary damages;

    g.    Other damages to be determined through discovery.

WHEREFORE, Plaintiff prays for Judgment against Defendant for whatever amount the Court or Jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, and attorney fees.

Respectfully submitted,

FAGAN MCMANUS, P.C.


By: /s/ *Jennifer L. McManus*
    Jennifer L. McManus (P65976)
    Attorney for Plaintiff
    25892 Woodward Avenue
    Royal Oak, MI  48067-0910
    (248) 542-6300
Dated:  July 21, 2016    jmcmanus@faganlawpc.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

COLLEEN BURNS,

    Plaintiff,

-vs-

MYCARE HEALTH CENTER,

    Defendant.

Case No. 16-

Hon.

---

Jennifer L. McManus  (P65976)
FAGAN MCMANUS, P.C.
Attorney for Plaintiff
25892 Woodward Avenue
Royal Oak, MI  48067-0910
(248) 542-6300
jmcmanus@faganlawpc.com

---

## **PLAINTIFF'S DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, by and through her attorneys, FAGAN MCMANUS, P.C., and hereby demands trial by jury on the above matter.

    Respectfully submitted,

    FAGAN MCMANUS, P.C.


    By: /s/ *Jennifer L. McManus*
       Jennifer L. McManus (P65976)
       Attorney for Plaintiff
       25892 Woodward Avenue
       Royal Oak, MI  48067-0910
       (248) 542-6300
Dated:  July 21, 2016       jmcmanus@faganlawpc.com